IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re: )
)
    Mahipal Ravipati ) Bankruptcy No.: 13-82145-JAC-11
    SSN: xxx-xx-3666 )
)
    Debtor. )
)

## DEBTOR'S PLAN OF REORGANIZATION

    Mahipal Ravipati (the "Debtor"), as Debtor and Debtor-in-possession, proposes this Plan of Reorganization (the "Plan") pursuant to section 1121(a) of Title 11 of the United States Code for the resolution of the Debtor's outstanding creditor claims and equity interests. Reference is made to the Debtor's Disclosure Statement (the "Disclosure Statement") for a discussion of the Debtor's history, business, properties and results of operations, and for a summary of this Plan and certain related matters.

    All holders of Claims and Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of this Plan.

## ARTICLE 1
## DEFINITIONS

    As used herein, the following terms have the respective meanings specified below, and such meanings shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder" and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any capitalized term used but not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code. In addition to such other terms as are defined in other sections of the Plan, the following capitalized terms have the following meanings when used in the Plan.

    1.1    "Administrative Claim" means a Claim for costs and expenses of administration allowed under section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code.

1.2 "Allowed Claim" means a Claim that is (a) not a Disputed Claim or (b) a Claim that has been allowed by a Final Order.

1.3 "Ballots" means the written Ballots for acceptance or rejection of the Plan.

1.4 "Bankruptcy Code" or "Code" means Title 11 of the United States Code as now in effect or hereafter amended.

1.5 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, which presides over this proceeding, or if necessary, the United States District Court for said District having original jurisdiction over this case.

1.6 "Bankruptcy Rules" means, collectively (a) the Federal Rules of Bankruptcy Procedure, and (b) the local rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

1.7 "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.8 "Cash" means cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any Person, including interests accrued or earned thereon, or a check from the Debtor.

1.9 "Claim" means any right to payment from the Debtor arising before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor prior to the Confirmation Date, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured or unsecured.

1.10 "Class" means one of the classes of Claims or Interests defined in Article III hereof.

1.11 "Confirmation" means the entry of a Confirmation Order confirming this Plan at or after a hearing pursuant to section 1129 of the Bankruptcy Code.

1.12 "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.13 "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.14 "Debtor" means Mahipal Ravipati.

1.15 "Disclosure Statement" means the Disclosure Statement filed by the Debtor as approved by the Bankruptcy Court for submission to the Creditors, interest holders, and parties-in-interest of the Debtor, as it may have been amended or supplemented from time to time.

1.16 "Disputed Claim" means a Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim to the extent that: (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in their respective Schedules to the extent of such excess; (ii) any corresponding Claim listed by the Debtor in their respective Schedules has been scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (iii) no corresponding Claim has been listed by the Debtor in their respective Schedules. Disputed Claims also includes Claims subject to a pending action for equitable subordination of such Claims.

1.17 "Distributions" means the properties or interests in property to be paid or distributed hereunder to the holders of Allowed Claims.

1.18 "Docket" means the docket in the Reorganization Case maintained by the Clerk.

1.19 "Effective Date" means the twentieth (20th) business day after an Order confirming this Plan becomes final and no longer open for appeal, stay or reconsideration in accordance with the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Appellate Procedure or the first business day of the next calendar month, whichever is later.

1.20 "Estate" means the estate created in this Reorganization Case under section 541 of the Bankruptcy Code.

1.21 "Executory Contract" means any unexpired lease and/or executory contract as set forth in section 365 of the Code.

1.22 "File" or "Filed" means filed with the Bankruptcy Court in the Reorganization Case.

1.23 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the Docket in the Reorganization Case, which has not been reversed, stayed, modified or amended.

1.24 "Impaired" as to a Class means the Plan alters the legal, equitable or contractual rights of a Claim or Interest holder within the meaning of 11 U.S.C. § 1124.

1.25 "Order" means an order or judgment of the Bankruptcy Court as entered on the Docket.

1.26 "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, indenture trustee, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code).

1.27 "Petition Date" means September 14, 2010, the date on which Debtor filed the voluntary Chapter 11 petition.

1.28 "Plan" means this Plan of Reorganization in its present form, or as it may be amended, modified, and/or supplemented from time to time in accordance with the Bankruptcy Code, or by agreement of all affected parties, or by order of the Bankruptcy Court, as the case may be.

1.29 "Pre-Petition Tax Claim" means a Tax Claim that arises prior to the Petition Date.

1.30 "Priority Claim" means all Claims entitled to priority under 11 U.S.C. §§ 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Tax Claim.

1.31 "Pro Rata" means proportionately, based on the percentage of the distribution made on account of a particular Allowed Claim bears to the distributions made on account of all Allowed Claims of the Class in which the Allowed Claim is included.

1.32 "Rejection Claim" means a Claim resulting from the rejection of a lease or executory contract by the Debtor.

1.33 "Reorganization Case" means, collectively, the Debtor's case under Chapter 11 of the Bankruptcy Code that was commenced on the Petition Date.

1.34 "Schedules" means the Schedules of Assets and Liabilities, Statement of Financial Affairs and Statement of Executory Contracts that may be filed by the Debtor with the Bankruptcy Court, as amended or supplemented on or before the Confirmation Date, listing the liabilities and assets of the Debtor.

1.35 "Secured Claim" means any Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.36 "Security Agreement" means the documentation under which a lien against property is reflected.

1.37 "Tax Claim" means either (a) an Unsecured Allowed Claim of a governmental entity as provided by section 507(a)(8) of the Code, or (b) an Allowed Claim of a governmental entity secured by a lien on property of the Debtor under applicable state law.

1.38 "Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, Pre-Petition Tax Claim or Secured Claim.

## ARTICLE 2
## DESIGNATION OF
## CLAIMS AND INTERESTS

2.1 The following is a designation of the classes of Claims and Interests under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Secured Claims that are not impaired have been noted and will not vote on the Plan. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class. Notwithstanding anything to the contrary contained in this Plan, no distribution shall be made on account of any Claim or Interest that is not an Allowed Claim.

 a. Class 1 – Administrative Expenses
 b. Class 2 – Priority (Unsecured) Federal Tax Claims
 c. Class 3 – Priority (Unsecured) State Tax Claims
 d. Class 4 – Secured Claims Against Real Estate
 e. Class 5 – Secured Vehicle Claims
 f. Class 6 – Non-Dischargeable Student Loans
 g. Class 7 – General Unsecured Claims

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE CLAIMS

3.1 General: Subject to the bar date provisions herein, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (a) the Effective Date or as soon as practicable thereafter, (b) the date on which such Claim becomes an Allowed Administrative Claim and (c) such other date as is mutually agreed upon by the Debtor and the holder of such Claim.

3.2 Payment of Statutory Fees: All fees payable pursuant to 28 U.S.C. sec. 1930 shall be paid in Cash equal to the amount of such Administrative Claim when due.

3.3 Bar Date for General Administrative Claims: Any holders of Administrative Claims, other than professionals employed by the Debtor with court approval, must file requests

5

for payment of Administrative Claims no later than ten (10) days prior to the date set by the Bankruptcy Court for a hearing on confirmation of the Debtor's Plan of Reorganization. Holders of Administrative Claims that have not filed such Proofs of Claim by this Administrative Claim bar date shall be forever barred from asserting such Claims against the Debtor or any of the Debtor's property.

3.4 Bar Date for Professionals: All professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Reorganization Case) shall File and serve on the Debtor and the Debtor's counsel an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) calendar days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Debtor and the professionals to whose application the objections are addressed no later than forty (40) days after the Effective Date. The Debtor may pay any professional fees and reimbursements or expenses incurred by the Debtor subsequent to the Effective Date without application to the Bankruptcy Court.

### ARTICLE 4
### CLASSIFICATION AND TREATMENT
### OF CLAIMS AND INTERESTS

1. **Class 1 – Administrative Expenses.**

    a. *Classification:*

    Class 1 consists of all administrative claims against the Estate allowed under section 503(b) of the Bankruptcy Code and any fees and charges assessed against the Estate under Chapter 123 of Title 28. Before the Debtor may pay, the Bankruptcy Court must approve such claims after notice and opportunity for a hearing as provided in Bankruptcy Rule 2002. This Class includes the claims of all professionals whose employment by the Debtor was approved by the Bankruptcy Court.

    b. *Treatment:*

    Class 1 is unimpaired, and so the members of this Class are not entitled to vote on the Plan. The Debtor will pay all court-approved claims in this Class in full on the Effective Date of the Plan. Any claims in this Class approved by the Court after the Effective Date will be paid when the order approving each such claim becomes final and non-appealable (usually fourteen (14) calendar days after entry).

### 2. Class 2 – Priority (Unsecured) Federal Tax Claims.

#### a. *Classification:*

Class 2 consists of all Priority (Unsecured) Federal Tax Claims as defined by Section 507 of the Bankruptcy Code. The filed proof of claim of the Internal Revenue Service (#1) states that the amount of this claim for 2012 federal taxes is $41,469.23. This amount consists of principal (taxes), interest and penalties. In the event that the Internal Revenue Service files an amended claim in this case to add any 2013 federal taxes, the total of 2012 and 2013 federal taxes owed by

the Debtor will be treated as a single Internal Revenue Service claim for the purpose of payment under this Plan.

#### b. *Treatment:*

Class 2 is impaired and, accordingly, Internal Revenue Service as the sole member of Class 2 is entitled to vote on the Plan. Pursuant to § 1129(a)(9)(C), this holder of an Allowed Priority (Unsecured) Federal Tax Claim will receive on account of such claim a monthly total payment to this Class of $3,000.00. The Debtor estimates that all claims in this Class will be paid in full, plus interest at the rate of 3.00% per annum, within a period that will not exceed twenty (20) months after the Court's confirmation order becomes final and non-appealable. Acceptance of this payment by the Internal Revenue Service will 1) constitute a waiver by said creditor of any and all penalties associated with this claim and 2) constitute an agreement that said creditor will not assert collection against the Debtor's joint-filing spouse so long as the Debtor makes full and timely payments to this creditor under the confirmed Plan.

#### c. *Required Plan Language:*

The Priority claim of the United States (IRS) shall not be discharged upon confirmation, and shall be discharged only upon payment in full in accordance with the confirmed plan. For tax periods listed on the claim of the United States (IRS), the time periods found in 26 U.S.C. § 6503(b) are tolled during the term of repayment as stated in the plan as confirmed.

In the event Debtor fails to remit payment on the unsecured priority portion and the general unsecured claim as each payment becomes due as set forth herein, or fails to file any post-petition federal tax payment as it becomes due, the automatic stay shall be terminated without further Order of the Court and the United States (IRS) shall be free to proceed with its legal and/or administrative remedies to collect any and all federal tax indebtedness of the Debtor.

Confirmation of this Plan will in no way release or absolve the individual responsible parties from their liability for the federal tax indebtedness of the Debtor. For the purpose of this Disclosure Statement, the Debtor estimates that the claims of the United States (IRS) will be paid in full with a single payment as stated above.

### 3. Class 3 – Priority (Unsecured) State Tax Claims.

#### a. *Classification:*

Class 3 consists of all Priority (Unsecured) State Tax Claims as defined by Section 507 of the Bankruptcy Code. The Alabama Department of Revenue was active at the beginning of this case but has not filed a proof of claim for principal (taxes), interest or penalties. In the event that the Alabama Department of Revenue files an amended claim in this case to add any 2013 state taxes, the total of 2012 and 2013 state taxes owed by the Debtor will be treated as a single state tax claim for the purpose of payment under this Plan.

#### b. *Treatment:*

Pursuant to § 1129(a)(9)(C), the holder of an Allowed Priority (Unsecured) State Tax Claim will receive on account of such claim, a monthly total payment to this Class of $3,000.00. The Debtor estimates that all claims in this Class will be paid in full, plus interest at the rate of 3.00% per annum, within a period that will not exceed twenty (20) months after the Court's confirmation order becomes final and non-appealable. Acceptance of this payment by Alabama Department of Revenue will 1) constitute a waiver by said creditor of any and all penalties associated with this claim and 2) constitute an agreement that said creditor will not assert collection against the Debtor's joint-filing spouse so long as the Debtor makes full and timely payments to this creditor under the confirmed Plan.

### 4. Class 4 – Secured Claims Against Real Estate

#### a. *Classification:*

Class 4 consists of all secured real estate mortgage claims on real property that the Debtor will sell or abandon with court approval during this case. The creditors holding claims in this Class are RREF CB SBL II Acquisitions, LLC, and CB&S Bank.

#### b. *Treatment:*

Class 4 is impaired and, accordingly, the members of Class 4 are entitled to vote on the Plan. Each holder of a secured real estate claim will be allowed to file an amended, unsecured claim for any deficiency balance that remains after their collateral is liquidated. Thereafter, the members of this Class will receive on account of such claims, pro rata shares of a monthly total payment to this Class of $3,000.00. The Debtor estimates that all claims in this Class will be paid in full, plus interest at the rate of 3.00% per annum, within a period that will not exceed forty (40) months after the Court's confirmation order becomes final and non-appealable.

Each holder of an allowed claim in this Class will retain all remedies, including remedies upon default, available under its original loan documents until the Debtor completes his required payments to that creditor under the terms of the confirmed Plan.

The Debtor will make payments based on the Clerk's claims docket and not on the estimated claims in the Debtor's filed schedules. Consequently, only Class members who have filed a proof of claim prior to the claims bar date, or an amended claim as may be appropriate, will receive payments from the Debtor. When the Debtor successfully completes the payments for this Class, the Debtor will be discharged from any remaining liability or balance still due on the claims of all members of this Class.

5. **Class 5 – Secured Vehicle Claims**

   a. *Classification:*

   Class 5 consists of the purchase-money lien of WFDS/WDS of Winterville, North Carolina on the Debtor's 2013 ML350 Mercedes automobile.

   b. *Treatment:*

   Class 5 is not impaired and, accordingly, is not entitled to vote on the Plan. The Debtor will remain current on post-petition payments to the creditors in this class.

6. **Class 6 – Non-Dischargeable Student Loans**

   a. *Classification:*

   Class 6 consists of the unsecured student loan claims held by Nelnet on behalf of the US Department of Education (#5) and American Educational Services (#7) filed in the Debtor's previous Chapter 11 case. The creditor has not filed a proof of claim in this case but the previous proofs of claim indicate that the total dollar amount of these claims is $32,196.81.

   b. *Treatment:*

   Class 6 is not impaired and, accordingly, the member of Class 7 is not entitled to vote on the Plan. The Debtor will remain current on post-petition payments to the creditor in this class.

7. **Class 7 - General Unsecured Claims**

   a. *Classification:*

   Class 7 consists of all non-priority unsecured claims not addressed in the previous classes described above. The filed proofs of claim indicate that the total dollar amount of these claims is $1,174,000.00, not including the unsecured claims addressed in other classes above.

   b. *Treatment:*

   Class 7 is impaired and, accordingly, the holders of Allowed Claims in such Class are entitled to vote on the Plan.

9

Case 13-82145-JAC11   Doc 93   Filed 01/15/14   Entered 01/15/14 16:16:50   Desc Main
Document   Page 9 of 17

When the Debtor completes his plan payments to Class 2 and Class 3 creditors (i.e., making said payments for twenty months), the Debtor will make a payment of $3,000.00 per month to the creditors in this Class (divided among the claimants in this Class) until twenty (20%) percent of each filed claim in this Class is paid. The Debtor expects to complete such payments in approximately sixty (60) months.

Each holder of an allowed claim in this Class will retain all remedies, including remedies upon default, available under its original loan documents until the Debtor completes his required payments to that creditor under the terms of the confirmed Plan.

The Debtor will make payments based on the Clerk's claims docket and not on the estimated claims in the Debtor's filed schedules. Consequently, only Class members who have filed a proof of claim prior to the claims bar date will receive payments from the Debtor. When the Debtor successfully completes the payments for this Class, the Debtor will be discharged from any remaining liability or balance still due on the claims of all members of this Class.

## ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1 The holders of Claims in all impaired Classes listed above shall be entitled to vote to accept or reject the Plan.

## ARTICLE 6
## MEANS FOR EXECUTION AND IMPLEMENTATION
## OF THE PLAN

6.1 Funding of the Distribution. On the Effective Date, the Debtor shall first fund payments to the holders of Allowed Administrative Claims.

6.2 Authorization to Take Necessary and Appropriate Actions to Effectuate Plan. On the Effective Date, the Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and Disclosure Statement.

6.3 Preservation of Rights of Action. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce any claims, rights and causes of action that the Debtor or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under sections 544 through 551 or other sections of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory. The Debtor or any successor to or designee thereof may pursue those rights of action, as appropriate, in accordance with what is in the best interests of the Debtor.

6.4 Except as otherwise provided for with respect to applications of professionals for compensation and reimbursement of expenses under Article 3 of the Plan, or as otherwise ordered by the Bankruptcy Court after notice and a hearing, objections by any party other than

10

Case 13-82145-JAC11    Doc 93    Filed 01/15/14    Entered 01/15/14 16:16:50    Desc Main
Document      Page 10 of 17

the Debtor to filed Claims shall be Filed and served upon the holder of such Claim or Administrative Claim not later than the Effective Date, unless this period is extended by the Court. Such extension may occur ex parte. After the Effective Date, only the Debtor shall have the exclusive right to object to Claims.

## ARTICLE 7
## FUNDING AND METHODS OF DISTRIBUTION AND
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

7.1     Funding of Distributions Under the Plan. The Debtor's normal cash flow shall be the sole source of funds for the payment authorized by the U.S. Bankruptcy Court's confirmation of this Plan.

7.2     Cash Distributions. All Cash distributions made pursuant to the Plan shall be made by the Debtor from the Chapter 11 estate. Any such payments may be made either by check or wire transfer, at the option of the payor.

7.3     Distribution Procedures. Except as otherwise provided in the Plan, all distributions of Cash and other property shall be made by the Debtor on the later of the Effective Date or the date on which such Claim is Allowed, or as soon thereafter as practicable. Distributions required to be made on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable. No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is allowed.

7.4     Distributions to Holders of Allowed Administrative Expense Claims. Commencing on the Effective Date, the Debtor shall, in accordance with Article 3 of the Plan, distribute to each holder of a then unpaid Allowed Administrative Expense Claim in the Allowed amount of such holder's Claim if and to the extent that the balance, if any, of such Claims is Allowed by Final Order. The Debtor shall not tender a payment to the holders of Allowed Administrative Expense Claims until all Disputed Claims that are alleged to be Administrative Claims have been allowed or disallowed.

7.5     Disputed Claims. Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim.

7.6     Delivery of Distributions and Undeliverable or Unclaimed Distributions.

        (a)     Delivery of Distributions in General. Distributions to holders of Allowed Claims shall be distributed by mail as follows: (1) at the addresses set forth on the respective proofs of claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (3) at the address reflected on the Schedule of Assets and Liabilities filed by the Debtor if no proof of claim or proof of interest is Filed and the Debtor have not received a written notice of a change of address.

11

(b) Undeliverable Distributions.

(i) Holding and Investment of Undeliverable Property. If the distribution to the holder of any Claim is returned to the Debtor as undeliverable, no further distribution shall be made to such holder unless and until the Debtor are notified in writing of such holder's then current address. Unclaimed Cash shall be held in trust in a segregated bank account in the name of the Debtor, for the benefit of the potential claimants of such funds, and shall be accounted for separately.

(ii) Distribution of Undeliverable Property After it Becomes Deliverable and Failure to Claim Undeliverable Property. Any holder of an Allowed Claim who does not assert a claim for an undeliverable distribution held by the Debtor within two years after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under this Plan. In such cases, any cash or securities held for distribution on account of such Claims shall become property of the Debtor.

7.7 Failure to Negotiate Checks. Checks issued in respect of distributions to holders of Allowed Claims under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Debtor shall hold any amounts returned to the Debtor in respect of such checks. Requests for reissuance of any such check may be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such voided check is required to be made within six months of the original issuance date of the check. Thereafter, all amounts represented by any voided check shall become unrestricted funds of the Debtor. All Claims in respect of void checks and the underlying distributions shall be discharged and forever barred from an assertion against the Debtor and its property.

7.8 Compliance with Tax Requirements. In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

7.9 Setoffs. Unless otherwise provided in a Final Order or in this Plan, the Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor may have against the holder thereof or its predecessor, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims the Debtor may have against such holder or its predecessor.

# ARTICLE 8
# TREATMENT OF EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

12

8.1     Rejection of All Executory Contracts and Leases Not Assumed. The Plan constitutes and incorporates a motion by the Debtor to reject, as of the Effective Date, all pre-petition executory contracts and unexpired leases to which the Debtor are parties, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order, or (ii) is the subject of a pending motion for authority to assume the contract or lease Filed by the Debtor prior to the Confirmation Date. The Plan establishes a bar date for filing Rejection Claims not already barred.

8.2     Bar Date for Filing of Rejection Claims. Any Claim for damages arising from the rejection under this Plan of an executory contract or unexpired lease that was not subject to an earlier bar date must be Filed within thirty (30) days after the mailing of notice of Confirmation or be forever barred and unenforceable against the Debtor, the Estates, any of their affiliates and their properties and barred from receiving any distribution under this Plan.

# ARTICLE 9
# EFFECTS OF PLAN CONFIRMATION

9.1     No Liability for Solicitation or Participation. As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

9.2     Limitation of Liability. Neither the Debtor and any professional Persons retained by them; any of their affiliates nor any of their officers, directors, partners, associates, employees, members or agents (collectively the "Exculpated Persons"), shall have or incur any liability to any Person for any act taken or omission made in good faith in connection with or related to the Bankruptcy Case or actions taken therein, including negotiating, formulating, implementing, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, or other agreement or document created in connection with the Plan. The Exculpated Persons shall have no liability to any Creditors or Equity Security Holders for actions taken under the Plan, in connection therewith or with respect thereto in good faith, including, without limitation, failure to obtain Confirmation of the Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons will not have or incur any liability to any holder of a Claim, holder of an Interest, or party-in-interest herein or any other Person for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as finally determined by the Bankruptcy Court, and in all respects such persons will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

9.3     Other Documents and Actions. The Debtor as Debtor-In-Possession may execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

9.4 Term of Injunctions or Stays. Unless otherwise provided, all injunctions or stays provided for in the Reorganization Case pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

## ARTICLE 10
## CONFIRMABILITY OF PLAN AND CRAMDOWN

The Debtor requests Confirmation under section 1129(b) of the Bankruptcy Code if any impaired class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. In that event, the Debtor reserve the right to modify the Plan to the extent, if any, that Confirmation of the Plan under section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE 11
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Case after the Effective Date as is legally permissible, including, without limitation, jurisdiction to:

11.1 Allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim or Indenture Trustee expenses and the resolution of any and all objections to the allowance or priority of Claims or Interests;

11.2 Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

11.3 Resolve any motions pending on the Effective Date to assume, assign or reject any executory contract or unexpired lease to which the Debtor are a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

11.4 Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

11.5 Decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

11.6 Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

11.7 Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan, including the provisions of Article 9 hereof;

11.8 Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

11.9 Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

11.10 Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11.11 Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

11.12 Enter an order concluding the Reorganization Case.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Reorganization Case, including, without limitation, the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1 Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractions of dollars will be made to any holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

12.2 Modification of Plan. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court,

15

amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

12.3 Withdrawal of Plan. The Debtor reserves the right, at any time prior to entry of the Confirmation Order, to revoke or withdraw the Plan. If the Debtor revoke or withdraw the Plan under this Section 12.3 or if the Effective Date does not occur, then the Plan shall be deemed null and void. In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

12.4 Governing Law. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

12.5 Time. In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight days, intermediate days that are not Business Days shall be excluded in the computation.

12.6 Payment Dates. Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day.

12.7 Headings. The headings used in this Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.

12.8 Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.9 Severability of Plan Provisions. If prior to Confirmation any term or provision of the Plan, which does not govern the treatment of Claims or Interests or the conditions of the Effective Date, is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or

interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.10 No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any Claims classification.

12.11 Notices. Notices to be provided under this Plan shall be transmitted as follows:

| | |
|---|---|
| Dr. Mahipal Ravipati, with a copy to: | Tazewell T. Shepard |
| 303 Williams Avenue | **SPARKMAN, SHEPARD & MORRIS, P.C.** |
| Huntsville, Alabama 35801 | P. O. Box 19045 |
| | Huntsville, AL  35804 |

This 15th day of January, 2014.

/s/ Mahipal Ravipati
Mahipal Ravipati, Debtor-in-Possession

Of Counsel:

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804
Tel: (256) 512-9924
Fax: (256) 512-9837